UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **JOHN GETTRIDGE** | **CIVIL ACTION NO. 3:12-cv-3148** |
| **LA. DOC #563755** | |
| **VS.** | **SECTION P** |
| | **JUDGE ROBERT G. JAMES** |
| **JACKSON PARISH CORRECTIONS** | |
| **CENTER, ET AL.** | **MAGISTRATE JUDGE KAREN L. HAYES** |

REPORT AND RECOMMENDATION

*Pro se* plaintiff John Gettridge, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on December 20, 2012. Plaintiff is an inmate in the custody of Louisiana's Department of Corrections (DOC). He is incarcerated at the Jackson Parish Corrections Center (JPCC) and complains that he was strip searched on December 8, 2012, following visitation. He sued JPCC, its Warden, and four corrections officers who participated in the search seeking compensatory damages for mental anguish, pain and suffering. He also requested that the corrections officers be terminated from employment for malfeasance and defamation. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

*Background*

Plaintiff is a DOC inmate. On December 8, 2012, at the conclusion of visitation, he and three other inmates were strip searched by corrections officers in room equipped with a camera.

(According to plaintiff, these TV's are monitored by female corrections officers.)

According to plaintiff post-visitation strip searches are standard practice at JPCC, even though the visitation area is monitored by television cameras and guards who constantly patrol the area. Among other things, plaintiff and others were required "to first pull our foreskin back on our penis" (sic) and to "squat and cough." Plaintiff was also ordered to bend over and spread his "butt cheeks" and then his rectum was inspected with the aid of a flash light.

Plaintiff was offended by the fact that the corrections officers found humor in this and made comments which provoked laughter amongst the guards. He claimed that one officer threatened to "put a hit on" plaintiff, upon discovering that he was from New Orleans.

According to plaintiff he had attended visitation on four other occasions and was never subjected to a strip search; nor was a memorandum circulated concerning search procedures.

Plaintiff asked for monetary damages for "cruel and unusual punishment, mental anguish, and pain and suffering..." and for the dismissal of the corrections officers involved in the search of his person.

### *Law and Analysis*

*1. Screening*

Plaintiff is a prisoner seeking redress from an officer or employee of a governmental entity who has been permitted to proceed *in forma pauperis*. Accordingly, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir.1998) (per curiam). Since he is proceeding *in forma pauperis,* his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2) (B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if it is frivolous or malicious, if

it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (A court should begin its analysis by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."); *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995).

Courts are not only vested with the authority to dismiss a claim based on an indisputably meritless legal theory, but are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

**2. Strip Search**

Plaintiff complains that he was the victim of an unreasonable search. He contends that the search in question violated his right to be free from cruel and unusual punishment as mandated by the Eight Amendment; and, he also implies that the search violated his rights under the Fourth Amendment which prohibits unreasonable searches. Indeed, the Fourth Amendment

3

generally provides the correct standard for evaluating inmate claims of unconstitutional strip searches and body cavity searches. *Moore v. Carwell*, 168 F.3d 234, 237 (5th Cir.1999) (citing *Elliott v. Lynn*, 38 F.3d 188, 191 n. 3 (5th Cir.1994); *United States v. Lilly*, 576 F.2d 1240 (5th Cir.1978)). However, a convict's Fourth Amendment protections are greatly limited in the context of prison searches; his rights are "diminished by the needs and exigencies of the institution in which he is incarcerated." The convict's Fourth Amendment rights must be balanced against the institutions legitimate penological concerns. *Moore*, 168 F.3d at 236-37, quoting *Elliott v. Lynn*, 38 F.3d 188, 190-91 (5th Cir.1994).

The search of a convict's body cavity is not unreasonable *per se* under either the Eighth or the Fourth Amendment. Such searches need not be predicated upon probable cause. In this context, the Fourth Amendment requires only that such searches be reasonable under all the facts and circumstances in which they are performed. In *Bell v. Wolfish*, the Supreme Court noted, "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell v. Wolfish,* 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Under this standard, the Court must strike a balance in favor of deference to the corrections officers' views of institutional safety versus the admittedly legitimate claims of inmates not to be searched in a humiliating and degrading manner. *Id.*

In this case, plaintiff alleged that he was forced to expose his genitalia and to spread his buttocks for inspection. Such searches have been consistently upheld as a reasonable penological

response to the real threat of smuggling contraband. *See Florence v. Board of Chosen Freeholders of County of Burlington*, — U.S. —, 132 S.Ct. 1510, at 1520, citing *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)("... correctional officials must be allowed to conduct an effective search ... and that this will require at least some detainees to lift their genitals or cough in a squatting position. These procedures, similar to the ones upheld in *Bell*, are designed to uncover contraband that can go undetected by a patdown, metal detector, and other less invasive searches.") In other words, the search described by plaintiff is not unreasonable under the circumstances and violates neither the Eighth or Fourth Amendments.

Plaintiff also complains that he was the object of verbal abuse or ridicule by the guards and was also the victim of a veiled threat. However, such claims of verbal abuse are not actionable under §1983. *See Siglar v. Hightower*, 112 F.3d 191, 193-94 (5th Cir.1997); *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002).

Finally, as previously noted, plaintiff has alleged no physical injury resulting from the alleged search, yet he seeks compensatory damages for "cruel and unusual punishment, mental anguish and pain and suffering." Title 42 U.S.C. § 1997e(e) states, "No federal civil action may be brought by a prisoner ... for mental or emotional injury ... without a prior showing of physical injury." Plaintiff has alleged no physical injury resulting from the search itself, and therefore, his request for monetary damages for precludes recovery and warrants dismissal of his complaint. *Hutchins v. McDaniels*, 512 F.3d 193 (5th Cir. 2007).

### *Conclusion and Recommendation*

For the foregoing reasons,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED**

**WITH PREJUDICE** as frivolous and for failing to state a claim for which relief might be granted in accordance with the provisions of 28 U.S.C. §1915(e)(2)(B).

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, February 19, 2013.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE